**IN THE UNITED STATES COURT FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| AMANI REED | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
| v. | )   No. _____ |
| | )   JURY DEMAND |
| ALEX LITTLE and LITSON PLLC, | ) |
|    Defendants. | ) |

## COMPLAINT

Plaintiff Amani Reed ("Plaintiff" or "Mr. Reed"), by and through his undersigned counsel, submit this Complaint in this action against Defendant Alex Little and Defendant Litson PLLC, and hereby alleges as follows:

### I.    NATURE OF THE CLAIMS

1. This is an action for monetary damages for defamation and false light invasion of privacy committed by Defendant Little against Plaintiff Reed, for which Defendant Litson is vicariously liable.

2. Plaintiffs demand a jury.

### II.    PARTIES

3. Plaintiff Amani Reed ("Mr. Reed") is a resident and citizen of Fulton County, Georgia. At all times relevant to this Complaint, he was a resident and citizen of Davidson County, Tennessee.

4. Defendant Alex Little is a resident and citizen of Davidson County, Tennessee.

5. Defendant Litson PLLC is a professional limited liability company organized under Tennessee law with its principal office at 54 Music Square E, Ste. 300, Nashville, TN 37203.

Alex Little is a member of Litson PLLC.  At all times described herein, Defendant Little was acting with apparent authority and rendering professional services for Defendant Litson.

### III.    STATEMENT OF THE CASE

6.    Plaintiff timely sued Defendant Little on February 20, 2025 and Defendant Litson for defamation and false light invasion of privacy in Chancery Court for Davidson County, No. 25-0097-II, on March 24, 2025.  Plaintiff voluntary nonsuited Defendant Little and Defendant Litson and the Chancery Court entered the Order of Voluntary Dismissal without Prejudice on June 11, 2025.  Because this Complaint is filed within one year of the Chancery Court's Order, it is timely filed pursuant to Tenn. Code Ann § 28-1-105.

### IV.    JURISDICTION & VENUE

7.    This action is between citizens of different States within the meaning of 28 U.S.C. § 1332(a). Plaintiff is a citizen of Georgia in that Plaintiff is an individual domiciled in Georgia. Defendant Little is a citizen of Tennessee in that he is an individual domiciled in Tennessee. Defendant Litson is a citizen of Tennessee in that Defendant is a limited liability company organized in Tennessee with its principal place of business in Tennessee. The amount in controversy exceeds $75,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332(a). Plaintiff seeks damages in the amount of $21,000,000, which exceeds $75,000 at the time of filing. To the extent any claim does not independently satisfy federal jurisdictional requirements, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) because all claims derive from a common nucleus of operative fact and form part of the same case or controversy as claims over which the Court has original jurisdiction.  Venue is proper in this district pursuant to Tenn. Code Ann. § 16-11-114 because a substantial part of the events or omissions giving rise to this action occurred in Davidson County.

## V.   FACTS

### A. Background: Mr. Reed's Employment at USN

8.      On July 1, 2022, Mr. Reed began employment as Director of University School of Nashville, Inc. ("USN").

9.      In this position, Mr. Reed was the chief executive of USN and reported directly to USN's Board of Trustees (the "USN Board" or "Board").

10.      Prior to becoming USN's Director, Mr. Reed served ten years as Head of School at The School at Columbia ("Columbia") in New York, New York. At Columbia, he was never disciplined for any performance issues. Prior to USN's terminating his employment, Mr. Reed was never counselled, punished or disciplined for any employment performance issue.

11.      Mr. Reed negotiated the terms of an employment contract (the "Contract") with the chair of the USN Board. He and USN entered the Contract with a five-year term and "for cause" termination protection. His compensation included $450,000 annual salary, retirement benefits, health insurance, a no-cost housing benefit at a home owned by USN, up to $500,000 for renovations to the home, and an annual discretionary bonus of 10% of his salary. Its total value was approximately $800,000 annually.

12.      During his employment, the USN Board awarded Mr. Reed his full discretionary bonuses for job performance, including as recently as July 20, 2024, and USN did not discipline or counsel Mr. Reed regarding his job performance prior to the events giving rise to this action.

### B. The Masullo Investigation

13.      On May 2, 2024, a then-senior Alumnus/now alumnus at USN (the "Alumnus") advised faculty members that she believed she had been subjected to inappropriate behavior by faculty member Dr. Dean Masullo, who was her teacher for her senior study program.

3

14. The faculty members reported the Alumnus' report to senior administration at USN. The senior administrators understood the allegations could constitute violations of USN policies regarding faculty conduct with students.

15. Mr. Reed immediately left a Leadership Nashville event and returned to USN to address the Alumnus' complaint. On his way back, Mr. Reed called and notified USN Board chair Eric Kopstain of the Alumnus' report.

16. Mr. Reed knew immediately that the situation was serious and that an independent investigation would need to be conducted by outside investigators.

17. Mr. Reed had Dr. Quinton Walker serve as administrative point of contact during the investigation due to Mr. Reed's concern that his son's past romantic relationship with the Alumnus created an appearance of a conflict of interest.

18. USN retained law firm Fisher Phillips on May 2, 2024 to advise and conduct the investigation. The Fisher Phillips team was led by attorney Marie Scott, an experienced and qualified investigator.

19. Pursuant to the USN plan of action, the Alumnus selected three faculty/administration members to serve as her "Care Team" – Jeff Edmonds, Beth Eberle, and Michael Hansen – to support her during the investigation. At least one Care Team member was present at all key interviews and meetings with the Alumnus.

20. USN provided counseling services to the Alumnus during the summer of the investigation and paid for outside counseling sessions. Ms. Scott provided her cell phone information to the Alumnus so she could call or text at any time.

4

21. Mr. Reed met with the Alumnus on May 7, 2024 and assured her that everything was being done to protect her identity, that an investigation was underway, and that Dr. Masullo would not return to USN while the investigation was underway.

22. Mr. Reed met again with the Alumnus on May 23, 2024, apologized for the stress she had to endure bringing her allegations forward, told her he admired her bravery, and assured her he was committed to keeping her updated.

23. On June 20, 2024, Ms. Scott advised the Alumnus and Jeff Edmonds that USN had decided to terminate Dr. Masullo. On July 3, 2024, Dr. Masullo was terminated and signed a separation agreement that included a release of any and all claims he could bring against the Alumnus.

24. Throughout the investigation, there were at least twenty-three documented instances of texts, emails, or calls between school administrators or the investigators and the Alumnus or her family regarding the investigation.

25. A second investigation into the Masullo Investigation, conducted by attorneys at Barnes & Thornburg ("B&T"), found that the investigators were independent, and it reported no criticism or impropriety regarding their performance of the Masullo Investigation.

26. The B&T Independent Investigation Report (the "B&T Report") did not conclude that Mr. Reed had violated any law, ethical standards, code of conduct, USN policies, or fiduciary duty while employed at USN. Every action and decision Mr. Reed took in relation to the Masullo Investigation was consistent with existing USN policies.

5

### C. Mr. Little's Defamatory Letter

27. Alex Little is an attorney and member of Defendant Litson. Defendant Little was acting as the attorney for the Alumnus and on behalf of Defendant Litson during the events described herein.

28. On July 10, 2024, at a meeting requested by the Alumnus, Defendant Little appeared unannounced. When Mr. Reed asked Defendant Little if he was acting as the Alumnus's attorney, Defendant Little said "no" and stated he was acting as her "translator." Defendant Little's denial was a misrepresentation. Jeff Edmonds has stated that he knew on July 8, 2024 that Defendant Little was serving as the Alumnus' attorney. On July 11th, 2024, Defendant Little advised Ms. Scott that he was in fact serving as the Alumnus's attorney.

29. Defendant Little wanted USN to terminate Mr. Reed's employment for his involvement with the Masullo Investigation and a goal of the letter described herein was to achieve that result. Defendant Little also wanted USN to replace Mr. Reed with Jeff Edmonds.

30. On August 22, 2024, Defendant Little wrote a letter to the USN Board of Trustees (the "Letter") on Defendant Litson PLLC's letterhead, as a member and agent of Defendant Litson PLLC, in his representative capacity as the attorney for the Alumnus. Letter attached as <u>Exhibit A</u>.

31. Defendant Little repeatedly expressly stated in the Letter that it was not related to any contemplated or threatened litigation by the Alumnus. He wrote: "It is important to clarify a few things at the outset. I am a lawyer, and [the Alumnus] is my client. But I'm not writing to threaten a lawsuit. [The Alumnus] has no interest in suing the school nor is she asking that it give her anything. She simply wants you—the Trustees appointed to lead USN—to know how the institution, its leadership, and its lawyers have failed her." Ex. A, p. 1. "As I wrote earlier, I am

6

not writing this letter because [the Alumnus] wants to sue USN or drag anyone into court."  Ex. A, p. 16.

32.     Therefore, the Letter and its contents are not subject to any litigation privilege.

33.     The Letter directly criticized Mr. Reed for his role in the Masullo Investigation and characterized him as dishonest with the Alumnus, her family, and the USN community, and as uncaring and dismissive of the Alumnus's needs as a victim of Dr. Masullo's misconduct. These criticisms and characterizations were misleading and/or false.

34.     In addition to containing false and defamatory statement, the tone of the Letter is hyperbolic and intended to shock its readers.  For instance, it states that USN's lawyers who conducted the Masullo Investigation "protected USN no differently than the lawyers from Miramax, Michigan State, or Penn State did for their respective clients in the wake of abuse by Harvey Weinstein, Jerry Sandusky, and Larry Nassar."  Ex. A, p. 8.

35.     Defendant Little viewed Mr. Reed as the head of administration at USN, and therefore the Letter's criticisms of "administrators," "administration," and "the school" are criticisms of Mr. Reed.

36.     The B&T Report mentions Fisher Phillips attorneys (by their pseudonym "former Outside Counsel") eighty-two times. Not once does it state or indicate any finding or belief that their investigation was not "independent." The Report's standard for investigative independence was whether "the investigation was independent of interference or influence" with "no direction from the Board of Trustees ("Board"), the Head of School ("Director"), or anyone else at USN." Under this standard, the Fisher Phillips investigation of Dr. Masullo was "independent."

37.     The Letter stated: "[the Alumnus] was mistreated by administrators and lawyers who sought to protect the school rather than the students." Ex. A, p. 1.

7

38. Defendant Little intended this statement to be directed at and a criticism of Mr. Reed. In fact, this statement was untrue because Mr. Reed treated the Alumnus with respect and due care throughout the Masullo Investigation and always prioritized her needs. Immediately after the Alumnus's report on May 2, 2024, school administrators flew to Delaware the next day to retrieve Dr. Masullo; USN organized a Care Team on May 2, 2024; Mr. Reed authorized USN's paying for psychological therapy for the Alumnus; and Mr. Reed met with and apologized to the Alumnus on May 23, 2024 and stated that he admired her bravery in coming forward.

39. Therefore, Defendant Little knew his statement "[the Alumnus] was mistreated by administrators and lawyers who sought to protect the school rather than the students" was untrue when he made it, or he made it with a reckless disregard for the truth and/or with negligence in failing to ascertain the truth of the statement.

40. The Letter stated that the school told the Alumnus it would keep her up to date on the investigation and "[t]hat turned out to be false." Ex. A, p. 8.

41. Defendant Little intended this statement to be directed at and a criticism of Mr. Reed. In fact, this statement was untrue because school administrators and the investigators kept the Alumnus up to date throughout the investigation. From the Alumnus's report on May 2, 2024 until June 20, 2024, there were at least twenty-three documented instances of texts, emails, or calls between school administrators or the investigators and the Alumnus or her family.

42. Therefore, Defendant Little knew his statement that school administrators did not keep the Alumnus up to date was untrue when he made it, or he made it with a reckless disregard for the truth and/or with negligence in failing to ascertain the truth of the statement.

43. The Letter stated: "After the first two days, [the Alumnus] heard nothing. Then she was told: 'An attorney wants to speak with you.'" Ex. A, p. 8.

44. Mr. Litle intended this statement to be directed at and a criticism of Mr. Reed. In fact, this statement was untrue because after the Alumnus's report on May 2, 2024, school administrators communicated with the Alumnus and her parents on multiple occasions over the weekend of May 4th and 5th regarding the investigation and to offer resources and support. Moreover, Mr. Reed met with her in person on May 7th and discussed her anxieties and concerns, explained the investigation process to her, and that the investigation would take some time and assured her Dr. Masullo would not return while it was pending.

45. Therefore, Defendant Little knew this statement was untrue when he made it, or he made it with a reckless disregard for the truth and/or with negligence in failing to ascertain the truth of the statement.

46. The Letter stated: "the only person willing or allowed to speak to [the Alumnus] with any connection to USN was Mrs. Scott" and that Mr. Reed "finally agreed to meet with the [Alumnus] in July." Ex. A, pp. 8, 11.

47. Defendant Little intended these statements to be directed at and criticisms of Mr. Reed. In fact, Mr. Reed met with the Alumnus all three times she requested a meeting: on May 7, 2024, May 23, 2024, and July 5, 2024. Defendant Little was present at the May 23rd and July 5th meetings. The Alumnus was also on campus almost daily from May through August 2024 doing art and photography projects and was not restricted in any way from speaking to anyone. USN also organized a Care Team of three faculty members selected by the Alumnus.

48. Therefore, Little knew his statement "the only person willing or allowed to speak to [the Alumnus] with any connection to USN was Mrs. Scott" was untrue when he made it, or he made it with a reckless disregard for the truth and/or with negligence in failing to ascertain the truth of the statement.

9

49. The Letter stated: "Nothing the school has done over the past few months reflects any awareness that this matter involves something more than an employment issue" and its investigation "did nothing to protect or assist [the Alumnus]."

50. Defendant Little intended these statements to be directed at and a criticism of Mr. Reed. In fact, the Alumnus had a Care Team from May 2, 2024; Mr. Reed met with and apologized to the Alumnus on May 23, 2024; Mr. Reed and other senior administrators met with the Alumnus on numerous occasions to offer support; Mr. Reed authorized USN's paying for psychological therapy for the Alumnus – all demonstrating awareness that the situation involved more than an employment issue; and, in addition to Mr. Reed's apology to the Alumnus on her May 23rd meeting, Mr. Reed apologized to the Alumnus's father on July 3, 2024 by stating he "appreciated the frustration you, [his wife], [the Alumnus] and your entire family are feeling as this process unfolds" and that he was "deeply sorry."

51. Therefore, Defendant Little knew these statements were untrue when he made them, or he made them with a reckless disregard for the truth and/or with negligence in failing to ascertain the truth of the statements.

52. The Letter stated: "The so-called independent investigation of Dr. Masullo was in fact an investigation to help the school justify firing him and a tool to keep the school out of hot water. It was not, in fact, an independent investigation . . ."

53. Defendant Little intended this statement to be directed at and a criticism of Mr. Reed. In fact, because the investigators were not employees of USN nor in any other way dependent upon or subordinate to USN, they were by definition independent investigators. The subsequent B&T Report confirmed that the investigators were independent and reported no criticism or impropriety regarding their performance. The B&T Report mentions Fisher Phillips attorneys (by

their pseudonym "former Outside Counsel") eighty-two times. Not once does it state or indicate any finding or belief that their investigation was not "independent." The Report's standard for investigative independence was whether "the investigation was independent of interference or influence" with "no direction from the Board of Trustees ("Board"), the Head of School ("Director"), or anyone else at USN." Under this standard, the Fisher Phillips investigation of Dr. Masullo was "independent."

54. Therefore, Defendant Little knew this statement was untrue when he made it, or he made it with a reckless disregard for the truth and/or with negligence in failing to ascertain the truth of the statement.

55. The Letter stated: "Mrs. Scott and later Director Reed told [the Alumnus] and her parents that the reason that all communication had to be routed through Mrs. Scott was because she was conducting an 'independent investigation' of Dr. Masullo's behavior. But that was not remotely true."

56. Defendant Little intended this statement to be directed at and a criticism of Mr. Reed. In fact, the Alumnus could and did route communications through her Care Team members, Jeff Edmonds and Michael Hansen. Furthermore, having retained an independent third-party to investigate, ensuring the Alumnus communicated directly with the investigators promoted and maintained the independence of the investigation.

57. Therefore, Defendant Little knew this statement was untrue when he made it, or he made it with a reckless disregard for the truth and/or with negligence in failing to ascertain the truth of the statement.

58. The Letter stated: "A true 'independent' investigation would align with the best practices recommended by organizations like the Southern Association of Independent Schools."

59.     Defendant Little intended this statement to be directed at and a criticism of Mr. Reed. In fact, the Southern Association of Independent Schools has not promulgated any best practices regarding such investigations. No known or established "best practices" regarding such investigations existed in May 2024. The only relevant report – from a task force of the National Association of Independent Schools – expressly stated it was "not intended as a detailed, stand-alone tactical plan" and that its statements were "recommendations, not mechanical mandates." Moreover, as an attorney, Mr. Little knew that it was the Board's role and responsibility, not Mr. Reed's role and responsibility, to adopt USN's policies.

60.     Therefore, Defendant Little knew this statement was misleading and untrue when he made it, or he made it with a reckless disregard for the truth and/or with negligence in failing to ascertain the truth of the statement.

61.     The Letter alleged that Mr. Reed misrepresented to the Alumnus and her parents that the Masullo Investigation was independent, and stated "Nor would other USN parents, faculty, and students have any reason to disbelieve Director Reed's email of July 12, which claimed that he engaged 'independent third-party experts.'"

62.     Defendant Little intended this statement to be directed at and a criticism of Mr. Reed. In fact, by hiring Ms. Scott at Fisher Phillips, USN had hired an expert attorney who was a third-party and who conducted an investigation that was independent from the influence of USN.

63.     Therefore, Defendant Little knew this statement was misleading and untrue when he made it, or he made it with a reckless disregard for the truth and/or with negligence in failing to ascertain the truth of the statement.

64.     The Letter stated: "Later, when [the Alumnus] made repeated requests for someone at USN to reach out to past students, Mrs. Scott continued to tell her no, claiming that the investigation was confidential,' so they could not say anything."

65.     Defendant Little intended this statement to be directed at and a criticism of Mr. Reed.  In fact, Ms. Scott reached out to the students and alumni that the Alumnus identified – some that the Alumnus identified on June 20, 2024, when she was advised the investigation was complete.

66.     Therefore, Defendant Little knew this statement was misleading and untrue when he made it, or he made it with a reckless disregard for the truth and/or with negligence in failing to ascertain the truth of the statement.

67.     The Letter stated: "When the end of June came and went without a conclusion to the investigation, and without [the Alumnus] hearing from anyone at the school, she publicly spoke about these matters on social media."

68.     Defendant Little intended this statement to be directed at and a criticism of Mr. Reed.  In fact, as confirmed by the B&T Report, Ms. Scott met with the Alumnus and Dr. Edmonds on June 20, 2024 and advised them that the investigation was concluded and USN had decided to terminate Dr. Masullo. She advised that the termination would occur after paperwork was completed.

69.     Therefore, Defendant Little knew this statement was misleading and untrue when he made it, or he made it with a reckless disregard for the truth and/or with negligence in failing to ascertain the truth of the statement.

70.     The Letter stated that Mr. Reed had hid from the Alumnus when she knocked on his door wanting to speak with him. Citing the alleged incident, the Letter states that Mr. Reed "did not

rise to the occasion. A student who (as described above) was victim to a predator at his school shows up at his door, and he hides in his office." Ex. A, p. 10.

71. Defendant Little intended this statement to be directed at and a criticism of Mr. Reed, and it greatly upset USN stakeholders. But the B&T Report proved it was false by reporting that the Alumnus did not tell the B&T investigators that she knocked on Mr. Reed's door as the Letter alleges.

72. In numerous conversations and email exchanges with Marie Scott in the weeks leading up to publication of his Letter, Ms. Scott provided Defendant Little with information and evidence that rebutted his criticisms of Mr. Reed, including evidence that rebutted the assertion that the Alumnus knocked on his door and Mr. Reed hid from her. Nonetheless, Defendant Little included the criticisms in his Letter's defamation of Mr. Reed, which proves the intentional nature of his actions, and the actual malice with which he defamed Mr. Reed.

73. In the Letter, Defendant Little made his misleading and false statements with intent to harm the reputation of Mr. Reed and to cause his termination of employment.

74. To turn public opinion and scorn against Mr. Reed, Defendant Little published his defamatory letter to the Board of Trustees and others. The Letter was picked up by local new media, which published stories based upon its defamatory content.

75. This tactic succeeded and the Letter led to student and faculty protests against Mr. Reed and President Kopstain calling call for their resignations or terminations.

76. USN Stakeholders gained access to the Letter and a significant number believed its accusations regarding Mr. Reed were true, resulting in more calls from parents and alumni for action against Mr. Reed and President Kopstain.

77. These actions by USN stakeholders were based on the defamations in the Letter and directly and proximately caused Mr. Reed's termination. His termination has directly and proximately caused Mr. Reed to suffer economic and non-economic damages.

78. Defendnant Little acted with actual malice against Mr. Reed to achieve this end by publishing the Letter containing false allegations.

79. Prior to the Masullo Investigation, the actions of USN evinced a clear intent to employ Mr. Reed as Director and renew his Contract for at least ten years.

80. Defendant Litson PLLC is vicariously liable for the tortious actions taken by Defendant Little because, at all times relevant, he was a member, agent, and employee of Defendant Litson PLLC.

81. The Letter's defamation directly and proximately caused Mr. Reed's termination and therefore destroyed his professional reputation. Mr. Reed has applied to multiple positions at independent private schools since being terminated for which he was amply qualified but, based upon information he received from schools, he did not receive a job offer because of his mid-year termination by USN and the misinformation spread by USN.

## VI.  CAUSES OF ACTION

### Cause of Action I – Defamation

82. Plaintiff incorporates herein all preceding paragraphs as if fully set forth herein.

83. Defendant Little, in writing and publishing the Letter, made the false and defamatory statements set forth in the Facts section above.

84. Each of these statements was directed at and constituted a criticism of Mr. Reed in his capacity as Director of USN.

85.     Each of these statements was false. Defendant Little knew each statement was false when he made it, or he made each statement with reckless disregard for its truth or falsity, and/or with negligence in failing to ascertain its truth.

86.     Defendant Little published these false and defamatory statements to the USN Board of Trustees and other third-parties. It was reasonably foreseeable given the scandalous subject matter and the hyperbolic tone of the Letter that it would become a source of controversy within USN and result in numerous new stories in Nashville media that were highly critical of Mr. Reed.

87.     As a direct and proximate result of Defendant Little's defamatory statements, Mr. Reed suffered loss of reputation, personal humiliation, impairment of standing in the community, and irreparable harm to his standing in the insular private independent school industry.

88.     As a direct and proximate result, Mr. Reed has suffered economic and emotional distress damages, including lost wages, loss of future earning capacity, and other consequential damages.

89.     These actions constitute defamation and libel for which Defendant Little is liable to Mr. Reed as legal damages.

90.     Because Defendant Little was a member of Defendant Litson, acted with apparent authority of Defendant Litson, was providing professional services for Defendant Litson when he defamed Mr. Reed, Defendant Litson PLLC is vicariously liable for Defendant Little's defamation of Mr. Reed.

91.     Defendant Little's defamatory conduct was intentional, fraudulent, malicious, and/or reckless, thereby entitling Mr. Reed to punitive damages.

### Cause of Action II – False Light Invasion of Privacy

92.     Plaintiff incorporates herein all preceding paragraphs as if fully set forth herein

93. Defendant Little, in writing and publishing the Letter, made the false and defamatory statements set forth in the Facts section above, which placed Mr. Reed in a false light before the public.

94. Each of these statements was directed at and constituted a criticism of Mr. Reed in his capacity as Director of USN and were highly offensive to a reasonable person, as evinced by the protests that occurred against Mr. Reed.

95. Each of these statements was false. Defendant Little knew each statement was false when he made it, or he made each statement with reckless disregard for its truth or falsity, and knew or acted with reckless disregard for the false light in which it would place Mr. Reed.

96. Defendant Little published these false and defamatory statements to the USN Board of Trustees and other third-parties. It was reasonably foreseeable given the scandalous subject matter and the hyperbolic tone of the Letter that it would become a source of controversy within USN and result in numerous new stories in Nashville media that were highly critical of Mr. Reed.

97. As a direct and proximate result of Defendant Little's false statements, Mr. Reed suffered loss of reputation, personal humiliation, impairment of standing in the community, and irreparable harm to his standing in the insular private independent school industry.

98. As a direct and proximate result, Mr. Reed has suffered economic and emotional distress damages, including lost wages, loss of future earning capacity, and other consequential damages.

99. These actions constitute defamation and libel for which Defendant Little is liable to Mr. Reed as legal damages.

100. Because Defendant Little was a member of Defendant Litson, acted with apparent authority of Defendant Litson, was providing professional services for Defendant Litson when he

17

defamed Mr. Reed, Defendant Litson PLLC is vicariously liable for Defendant Little's defamation of Mr. Reed.

101.    Defendant Little's conduct was intentional, malicious, and/or reckless, thereby entitling Mr. Reed to punitive damages

## PRAYERS FOR RELIEF

Wherefore, premises considered, Plaintiffs request this Court enter an Order of Judgment in favor of Plaintiff containing the following:

1.    finding Defendant Alex Little and Defendant Litson PLLC liable to Plaintiff Amani Reed for defamation;

2.    finding Defendant Alex Little and Defendant Litson PLLC liable to Plaintiffs Amani Reed false light invasion of privacy;

3.    awarding Plaintiff Amani Reed $16,000,000 in damages for direct/actual damages and indirect/consequential damages;

4.    awarding Plaintiff Amani Reed $5,000,000 in compensatory damages for mental anguish, emotional distress, and pain and suffering;

5.    awarding Plaintiff Amani Reed the maximum amount of punitive damages available under the law against each Defendant;

6.    other and further relief as the court may deem to be just and proper.

Respectfully submitted,

T. McKee Law, PLLC


/s Todd C. McKee
Todd C. McKee
BPRN 18123
4235 Hillsboro Pike, Ste. 300
Nashville, TN 37215
(615) 916-3224
tmckee@tmckeelaw.com